SEAMANS, ordinary, for use, vs. KING et al.

79 611<br>95 559

Personal property brought into a justice's court by garnishment and ordered to be sold, being claimed by the debtor as exempt, he asserting his claim by affidavit of illegality, and the illegality being sustained first by the court and afterward by the jury on appeal, the debtor was entitled to have possession of the property at once, no order being obtained to hold it longer; and the constable is not liable on his bond for yielding the possession, though afterwards a *certiorari* was sued out, the judgment reversed, and upon a new trial had in the justice's court, the property found subject, and a fresh order for sale granted, and though the property, in the meantime, had been put by the debtor out of reach, and the plaintiff thereby lost all the fruits of the litigation.

January 13, 1888.

Garnishment. Justice Courts. Constables. Bonds. Before Judge BOYNTON. Rockdale Superior Court. February Adjourned Term, 1887.

Reported in the decision.

A. C. McCALLA, for plaintiff in error.

GEO. W. GLEATON, for defendants.

BLECKLEY, Chief Justice.

This is a safe case. King was a constable. The action was upon his official bond. It involved his liability for the safe-keeping of a safe. We think him safe against the liability. The property was the subject-matter of a garnishment returnable to a justice's court, issued at the instance of Rollins, upon a judgment against Jones, one Tilley being the garnishee. Tilley by his answer admitted his possession as bailee, also the owernership of Jones, and thereupon surrendered the property; and the court ordered it to be sold, as pointed out in the code, §§3305, 3549. Jones filed an affidavit of illegality, to the effect that the *fi. fa.*, garnishment and order of sale were proceed-

ing against him illegally, on several grounds, amongst them, because, pending the proceedings, the safe had been set apart to him by the ordinary as exempt or homestead property. On this ground alone the court entertained the affidavit, sustained it, and adjudged that the levy and garnishment be dismissed. Rollins appealed to a jury. The jury found for the defendant, and the court again adjudged that the illegality be sustained and the levy dismissed. Within four days thereafter, the court, being still in session, passed an order that the safe be delivered to Jones, and the order was executed, not by King, but by the other constable of the district. This transpired in the absence of the counsel of Rollins, who, as soon as he heard of it, informed both constables that he intended to carry the case up to the superior court by *certiorari*, and instructed them to retake the safe and hold it to abide the result. Instead of so doing, they, one or both, accepted the promise of Jones that he would hold under them, but he soon afterwards put the safe out of the way, and it remains " abroad." The counsel did sue out a *certiorari*, and thereby procured a reversal of the verdict and judgment; and the case was submitted to another jury in the justice's court, and a verdict was found for the plaintiff; after which, that court adjudged that the affidavit of illegality be overruled, and that the order of sale be carried into effect. Thus, after about three years of litigation, the preliminaries to a sale were all adjusted, and the only obstacle that remained was, that there was no safe within the bailiwick to be sold; the contemplated sale lacked the corporal presence of a subject-matter.

The next step taken was to bring the present action on King's bond; the official misfeasance alleged in the declaration being, that he turned the property over to Jones, failed to retain possession of it, failed and refused to repossess himself of it as directed by the plaintiff's attorney, and failed to sell it in pursuance of the order of the court.

The action was tried, a verdict rendered for the defendants, and a new trial denied.

Without disc ssing or even stating the grounds of the motion for a new trial, it is clear that the plaintiff could not recover, for the reason, were there no other, that independently of the *ex parte* order of the justice's court to deliver the safe to Jones, he had a right to its possession as a legal incident to the verdict rendered in his favor, and the judgment entered thereon sustaining the illegality and dismissing the levy. The purpose of the affidavit of illegality, as finally shaped by amendment, was to protect the property from sale as property exempt from levy and sale by the constitution and laws of this State. *Frost vs. Borders*, 59 *Ga.* 817. And the purpose of the verdict and the judgment thereon was to give effect to the asserted exemption. They virtually loosed the hold of the law upon the property, and released it from seizure. No further order was needed. Jones was entitled to have possession immediately. The intention of the plaintiff's counsel to apply for a *certiorari* was no *supersedeas* of the judgment, even had his intention been disclosed before the safe was turned over; but it was not declared till afterwards. Possibly, had he applied to the justice's court for an order to detain the property until he could sue out a *certiorari*, it could have been granted. *Lindsey vs. Lindsey*, 14 *Ga.* 657; *Holcombe vs. Roberts*, 19 *Ga.* 588; *Crawford vs. Ross*, 39 *Ga.* 44. But in the absence of such an order, the *supersedeas* could come into existence only with the sanction of the petition for *certiorari*, and would operate then only to stay further proceedings, not undoing anything that had been done. *Board of Commissioners vs. Wimberly*, 55 *Ga.* 570, and cases cited. When King was instructed by counsel to retake the property, Jones had a lawful and rightful possession of the same, and it was not King's duty, nor even in his power, to disturb that possession.

Judgment affirmed.